# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

Stephen Seiber, Chris Robinson, Pamela
Hughes, *on behalf of themselves and all others
similarly situated*,

     Plaintiffs,

  v.

Jaguar Land Rover North America, LLC,

     Defendant.

Civil Action No.:

**CLASS ACTION COMPLAINT**

Plaintiffs, Stephen Seiber, Chris Robinson, and Pamela Hughes ("Plaintiffs"), by undersigned counsel, bring the following Class Action Complaint against Jaguar Land Rover North America, LLC, and allege, on their own behalf and on behalf of all those similarly situated, as follows:

## INTRODUCTION

1. Plaintiffs bring this lawsuit on behalf of themselves and proposed classes of past and present owners and lessees of defective 2020-2022 Land Rover Defender vehicles (collectively the "Class Vehicles") marketed, distributed, sold, warranted, and serviced by Defendant Jaguar Land Rover North America, LLC ("Defendant" or "Land Rover").

2. Plaintiffs and the Classes were damaged because the Class Vehicles contain defective windshields.

3. Beginning as early as 2019 Land Rover knew that the Class Vehicles contain one or more defects in the way the vehicles are manufactured and/or made that can cause the windshield to crack, chip and/or fracture (the "Windshield Defect" or the "Defect"). Upon information and belief, the Windshield Defect occurs due to either deficient materials used to make the windshield itself and/or a deficiency in the structure of the Class Vehicles.

4.      Class Vehicle owners report that their windshields failed for no reason at all. Others have reported windshield failure as a result of circumstances that would not cause a non-defective windshield to fail, such as a very slight impact.

5.      Land Rover, however, has refused to repair or replace the defective windshields in the Class Vehicle under Land Rover's warranty, requiring that Class Vehicle owners pay hundreds or thousands of dollars to repair the Defect – even where the Defect occurs nearly immediately after Class Vehicle owners take possession of their vehicles.

6.      In addition, the replacement windshields provided by Defendant (which Class Vehicle owners must pay for out-of-pocket) are also defective and as a result, Class Vehicle owners often must repeatedly replace their windshields:

- NHTSA Complaint No. 11439152, November 3, 2021 (Incident Date May 29, 2021): 2 cracked windshields, car has only 15K miles- TONS of Defender owners on FB groups and forums same- some one 4th and 5th windshields- current wait to new ones from UK is 2-4 months. […]

7.      Further, the Windshield Defect can and often does manifest immediately after Class Members take ownership of the vehicles and Class Vehicle have complained that they experienced the Windshield Defect within weeks of acquiring their vehicles:

- NHTSA Complaint No. 11439215, November 3, 2021 (Incident Date September 21, 2021): My windshield broke in only owning this car **30 days** I hear from other people that this is there 3 time replacement. I think this is a design issues and should be looked into.

- NHTSA Complaint No. 11453301, February 21, 2022 (Incident Date February 17, 2022): Easily cracked windshield. **Less than 30 days owned** and a small pebble cracked my windshield.

- NHTSA Complaint No. 11439215, March 20, 2022 (Incident Date April 1, 2021): **Shortly after buying the car** a small people hit the windshield while driving on the highway and broke the windshield right in the eyesight of the driver side. It was a little larger than a quarter in size and took 3 months for replacement due to

2

back order. 2 weeks after the replacement the windshield spontaneously cracked while driving from the middle base of the windshield up and towards the passenger side about 20 inches long. Nothing hit the car, it just cracked. No heater or defrost was on. It took 6 months for replacement due to Land Rover ordering the wrong windshield and back orders. During this time the windshield got 3 more chips from pebbles/small rocks while driving. 2 weeks after this replacement a small rock hit the windshield on the driver side and chipped it about the size of a nickel. I am getting this filled tomorrow. This is clearly a defect with the windshield as I have had maybe 2 broken windshields in my life up to this point.

8.      The Windshield Defect poses an extreme safety hazard to drivers, passengers, and pedestrians because a spontaneously shattering or cracking windshield can impair the driver's view, distract the driver, and result in dislodged glass that can injure drivers, passengers and pedestrians. As set forth below the cracks on the Plaintiffs' and other Class Vehicle owners' respective windshields were significant and spread across several feet of the windshields.

9.      Given the inherent safety risks associated with driving a vehicle with a cracked windshield, many states make it illegal to operate a vehicle with a cracked windshield where the windshield is defective such that it impairs the driver's vision. *See, e.g.*,

- *California*: California Vehicle Code 26710 ("It is unlawful to operate any motor vehicle upon a highway when the windshield or rear window is in such a defective condition as to impair the driver's vision either to the front or rear."); https://www.revisor.mn.gov/statutes/cite/169.71 ("A person shall not drive or operate any motor vehicle with: (1) a windshield cracked or discolored to an extent to limit or obstruct proper vision") (last visited Jun. 28, 2022);

- *Virginia*: https://law.lis.virginia.gov/admincode/title19/agency30/chapter70/section210/ (motor vehicle will not pass a safety inspection if windshield has a pit, chip or crack larger than an 1-1/2 inches in diameter) (last visited Sep. 13, 2024);

10.    Moreover, in the event a vehicle is involved in a collision, an intact windshield assists in transferring the force of a front-end impact down to the chassis, which reduces the effect of the impact felt inside the vehicle and helps protect the passengers. However, where a vehicle's windshield is cracked and then subsequently shatters during a collision, the vehicle occupants are at greater risk of sustaining injuries.

11.    In addition, the windshield is a vital component of a vehicle's safety restraint system, which also includes airbags and seatbelts. These safety features, including the windshield, are all part of a safety network.  Each individual component of this network is dependent on the others functioning properly. Thus, if there is a compromise or weakness in just one aspect of the network, the likelihood of other parts not working properly is increased.  All components of a vehicle's safety restraint system are designed to work together to keep vehicle occupants within the relative safety of the passenger compartment during collision or roll over.

12.    To that end, the windshield provides support that a passenger-side airbag needs to deploy properly.  If the windshield is compromised, the airbag may be useless in a collision. Similarly, the windshield provides much of the roof support for most vehicles.  As a result, the windshield is a crucial component in preserving the structural integrity of the vehicle's passenger compartment during roll-overs in that the windshield supports the roof, thereby keeping the roof from collapsing and crushing the driver and passengers.

13.    In addition to these safety issues, the cost to repair the Windshield Defect can be exorbitant – more than $2,000 for a replacement windshield – requiring consumers to pay significant sums over the life of their Class Vehicles.

14.    As set forth below, Defendant knew the Class Vehicles were defective and not fit for their intended purpose of providing consumers with safe and reliable transportation at the

time of the sale and thereafter.  Defendant has actively concealed the true nature and extent of the Windshield Defect from Plaintiffs and the other Class Members, and failed to disclose it to them, at the time of purchase or lease and thereafter.

15.     Had Plaintiffs and the Class Members known about the Windshield Defect, they would not have purchased the Class Vehicles or would have paid substantially less for them.

16.     Despite being notified of the Windshield Defect from, among other things, pre-production testing, numerous consumer complaints (both to NHTSA and on Defender-enthusiast websites and Defender Facebook Groups), warranty data, and dealership repair orders, Defendant has not recalled the Class Vehicles to repair the Windshield Defect, has not issued bulletins to its dealerships acknowledging that the Class Vehicles suffer from the Windshield Defect, has not offered its customers a suitable repair or non-defective replacement windshield free of charge, and has not offered to reimburse all Class Vehicle owners and leaseholders the costs they incurred relating to diagnosing and repairing the Windshield Defect.

17.     Land Rover knew of and concealed the Windshield Defect that is contained in every Class Vehicle, along with the attendant dangerous safety problems and associated repair costs, from Plaintiffs and the other Class Members both at the time of sale and repair and thereafter.

18.     As a result of their reliance on Defendant's omissions and/or misrepresentations, owners and/or lessees of the Class Vehicles have suffered ascertainable loss of money, property, and/or loss in value of their Class Vehicles.

19.     Plaintiffs have each given Land Rover a reasonable opportunity to cure the Windshield Defect, but Land Rover has refused to cure the defect or otherwise has been unable to do so within a reasonable time.

20.    Land Rover's conduct is in violation of the California Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.*, California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq.*, Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196, *et seq.*, and constitutes fraudulent concealment, unjust enrichment, and a breach of express and implied warranties.

21.    Land Rover has and will continue to benefit from its unlawful conduct – by selling more vehicles, at a higher price, and avoiding warranty obligations – while consumers are harmed at the point of sale as their vehicles continue to suffer from the unremedied Windshield Defect.

22.    To remedy Land Rover's unlawful conduct, Plaintiffs, on behalf of the proposed class members, seek damages and restitution from Land Rover, as well as notification to class members about the defect.

## PARTIES

23.    Plaintiff Stephen Seiber ("Mr. Seiber") is an adult individual residing in Del Mar, California.

24.    Plaintiff Chris Robinson ("Mr. Robinson") is an adult individual residing in Mt. Juliet, Tennessee.

25.    Plaintiff Pamela Hughes ("Ms. Hughes") is an adult individual residing in Lake George, Colorado.

26.    Defendant Jaguar Land Rover North America, LLC is an automobile company that distributes, markets, services, warrants, repairs, sells and leases passenger vehicles – designed and manufactured by Jaguar Land Rover Automotive PLC ("JLR PLC") and Jaguar Land Rover Limited ("JLR LTD," together "JLR UK"), including the Class Vehicles – in North

America.  It maintains its corporate headquarters and principal place of business at 100 Jaguar Land Rover Way, Mahwah, New Jersey 07495.

27.    At all relevant times, Defendant was engaged in the business of marketing, supplying, and selling motor vehicles accompanied by written warranties to the public at large through a system of authorized dealerships.

28.    At all times herein mentioned,  Land Rover reviews and analyzes warranty data submitted by Land Rover's dealerships and authorized technicians in order to identify defect trends in vehicles. Upon information and belief,  Land Rover dictates that when a repair is made under warranty (or warranty coverage is requested), service centers must provide Defendant with detailed documentation of the problem and the fix that describes the complaint, cause, and correction, and also save the broken part in the event Defendant decides to audit the dealership. Land Rover uses this information to determine whether particular repairs are covered by an applicable Land Rover warranty or are indicative of a pervasive defect.

29.    Land Rover also developed the marketing materials to which Plaintiffs and the Classes were exposed, owner's manuals, informational brochures, warranty booklets, and information included in maintenance recommendations and/or schedules for the Class Vehicles, all of which fail to disclose the Windshield Defect.

## JURISDICTION AND VENUE

30.    This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d) of the Class Action Fairness Act of 2005 because: (i) there are 100 or more class members, (ii) there is an aggregate amount in controversy exceeding $5,000,000, exclusive of interest and costs, and (iii) there is minimal diversity because Plaintiffs and Class Members, and Defendant are citizens of different states.

7

31.     Personal jurisdiction and venue are proper in this District as Defendant is headquartered in this District.

## FACTUAL ALLEGATIONS APPLICABLE TO INDIVIDUAL PLAINTIFFS

### I.    Stephen Seiber

32.     On September 18, 2020, Mr. Seiber, a resident of California, purchased a new 2020 Land Rover Defender, Vehicle Identification Number SALE9EEU2L2014455 (hereafter the "Seiber Vehicle") from Hoehn JLR Inc. d/b/a Jaguar Land Rover Carlsbad (hereafter "Jaguar Land Rover Carlsbad"), an authorized Land Rover dealership located in Carlsbad, California.

33.     Mr. Seiber paid $87,760.00, plus taxes, fees, and other charges, for the Seiber Vehicle.

34.     Passenger safety and reliability were important factors to Mr. Seiber's decision to purchase the vehicle. Prior to purchasing the 2020 Land Rover Defender, Mr. Seiber visited Land Rover Carlsbad where he read Land Rover's sticker affixed to that vehicle's window. Based on Land Rover's representations, Mr. Seiber was led to believe that the 2020 Land Rover Defender was, among other things, a safe, reliable, and high-quality vehicle, and Land Rover's representations induced him to purchase the vehicle.

35.     Prior to the purchase, Jaguar Land Rover Carlsbad assured Mr. Seiber that the Seiber Vehicle was accompanied by Jaguar Land Rover North America, LLC's New Vehicle Limited Warranty.

36.     In its New Vehicle Limited Warranty Land Rover promised to "correct defects in factory-supplied materials or factory workmanship" without charge within 4 years or 50,000 miles in service, whichever occurs first.

37.     Despite Mr. Seiber's research prior to purchasing the vehicle, neither Land Rover nor the selling dealership ever disclosed at the time of purchase that the 2020 Land Rover Defender contained the Windshield Defect. Indeed, Land Rover concealed this information from consumers, and Mr. Seiber was not aware of, and did not have any reason to anticipate, that his vehicle was afflicted by the Windshield Defect when he purchased the vehicle.

38.     Land Rover's omissions were material to Mr. Seiber. If Land Rover had adequately disclosed these facts before Mr. Seiber purchased the vehicle, he would have learned of the concealed information and would not have bought the vehicle had he known the vehicle suffered from the Windshield Defect.

39.     In March of 2022 Mr. Seiber experienced the Windshield Defect for the first time. As Mr. Seiber's spouse was driving the vehicle on a local road, a small pebble hit the windshield causing it to crack.

40.     In the days that followed, the cracks had spread out with some reaching over ten inches in lengths.  The cracks were located predominantly on the driver side of the windshield, in the driver's line of sight, causing a distraction and impairing visibility.

41.     The windshield cracks impaired visibility out of the vehicle, especially because when Mr. Seiber or his spouse drove the Seiber Vehicle during certain hours of the day sunlight reflected off the crack and created a significant glare which made it difficult them to see through the windshield while driving.

42.     Thereafter, Mr. Seiber called Land Rover Boise located in Boise, Idaho, a Land Rover authorized dealership, informed the dealership about the circumstances of the windshield crack, and requested a repair.

43.     Land Rover Boise responded that no replacement windshields were available.

44.    As a result, Mr. Seiber and his spouse had no choice but to continue driving the Seiver Vehicle for over a month with a cracked windshield.

45.    On May 2, 2022, once Land Rover Boise sourced a replacement windshield, Mr. Seiber brought his vehicle to Land Rover Boise for a repair.  Land Rover Boise, via its windshield intermediary Knight's Glass Service, replaced the windshield and performed calibration of windshield mounted electronic sensors and charged Mr. Seiber $2,095.81.  Mr. Seiber later received a $500.00 reimbursement from his automobile insurance company in connection with that repair.  The dealership did not cover the replacement windshield under Land Rover's warranty.

46.    In or around late June or early July 2023, Mr. Seiber experienced the Windshield Defect for the second time.  As Mr. Seiber's spouse was driving the Seiber Vehicle on a local road, she heard a loud pop and saw a crack appeared in the windshield.  The crack spread from the center of the windshield to its bottom.

47.    Subsequently, Mr. Seiber called Land Rover Boise again, informed the dealership about the circumstances of the windshield crack, and requested a repair.

48.    In addition, Mr. Seiber asked Land Rover Boise whether windshields in the Land Rover Defended vehicles suffered from a defect. Mr. Seiber believed there may be a defect with the windshield because a small impact from a pebble should not have caused the windshield to crack.  Indeed, Mr. Seiber previously owned other vehicles that experienced windshield impacts from small pebbles, but they never resulted in chips or cracks to the windshields in those other vehicles.  However, Land Rover Boise denied that there were any defects with the Class Vehicle windshields.

49.     On August 4, 2023, once Land Rover Boise sourced a replacement windshield, Mr. Seiber brought his vehicle to Land Rover Boise for a repair.  Land Rover Boise, via its windshield intermediary Knight's Glass Service, replaced the windshield and performed calibration of windshield mounted electronic sensors and charged Mr. Seiber $2,105.93.  Mr. Seiber later received a $500.00 reimbursement from his automobile insurance company in connection with that repair. Again, the dealership did not cover the replacement windshield under Land Rover's warranty.

50.     In or about March 2024, Mr. Seiber experienced the Windshield Defect for the third time. As Mr. Seiber's spouse was driving the Seiber Vehicle on a local road, she heard a loud pop.  When she got home, Mr. Seiber observed a crack that spread out from the middle of the windshield and into different directions.

51.     On or about April 29, 2022, Mr. Seiber took his vehicle to Jaguar Land Rover Carlsbad, informed the dealership about the circumstances of the windshield crack, that he believes the crack was the result of a defect with the windshield itself, and sought a repair or replacement windshield.  Jaguar Land Rover Carlsbad responded it was not aware of any issues with the windshields.

52.     Jaguar Land Rover Carlsbad then replaced the windshield and performed calibration of windshield mounted electronic sensors, for which Mr. Seiber paid $2,471.19.

53.     On June 11, 2024, Mr. Seiber, through his counsel, sent a letter to Land Rover advising it that the Seiber Vehicle suffered from the Windshield Defect and that Mr. Seiber was denied a replacement windshield under Land Rover's warranty.

54.    On June 30, 2024, as Mr. Seiber was driving the vehicle on the freeway, he heard a loud pop and immediately observed a crack in the windshield.  The cracks continued to spread as he continued to drive, grooving to over twelve inches in length.

55.    At all times, Mr. Seiber has driven his vehicle in a foreseeable manner and in the manner in which it was intended to be used.

**II.    Chris Robinson**

56.    On September 17, 2020, Mr. Robinson purchased a new 2020 Land Rover Defender, Vehicle Identification Number SALEJEEX8L2014980 (hereafter the "Robinson Vehicle") from Land Rover Knoxville (hereafter "Land Rover Knoxville"), an authorized Land Rover dealership located in Knoxville, Tennessee.

57.    Mr. Robinson paid $66,650.00, plus taxes, fees, and other charges, for the Robinson Vehicle.

58.    Passenger safety and reliability were important factors to Mr. Robinson's decision to purchase the vehicle. Prior to purchasing the 2020 Land Rover Defender, Mr. Robinson researched the vehicle by looking at the vehicle's specifications and features on Land Rover's website where the Land Rover Defender was described as durable and tough, and was depicted driving in the desert and terrain, suggesting rugged reliability and capability as an offroad vehicle.  Based on Land Rover's representations, Mr. Robinson was led to believe that the 2020 Land Rover Defender was, among other things, a safe, reliable, and high-quality vehicle, and Land Rover's representations induced him to purchase the vehicle.

59.    Prior to the purchase, Land Rover Knoxville assured Mr. Robinson that the Robinson Vehicle was accompanied by Jaguar Land Rover North America, LLC's New Vehicle Limited Warranty.

60.    In its New Vehicle Limited Warranty Land Rover promised to "correct defects in factory-supplied materials or factory workmanship" without charge within 4 years or 50,000 miles in service, whichever occurs first.

61.    Despite Mr. Robinson's research prior to purchasing the vehicle, neither Land Rover nor the selling dealership ever disclosed at the time of purchase that the 2020 Land Rover Defender contained the Windshield Defect. Indeed, Land Rover concealed this information from consumers, and Mr. Robinson was not aware of, and did not have any reason to anticipate, that his vehicle was afflicted by the Windshield Defect when he purchased the vehicle.

62.    Land Rover's omissions were material to Mr. Robinson. If Land Rover had adequately disclosed these facts before Mr. Robinson purchased the vehicle, he would have learned of the concealed information and would not have bought the vehicle had he known the vehicle suffered from the Windshield Defect.

63.    On or about May 30, 2022, Mr. Robinson experienced the Windshield Defect for the first time when his windshield developed a crack, which continued to spread in the days that followed.  Neither Mr. Robinson, nor his spouse – the primary vehicle driver – observed anything impact the Robinson Vehicle windshield prior to the crack forming.

64.    The windshield crack impaired visibility out of the vehicle, especially because when Mr. Robinson's spouse drove the Robinson Vehicle during certain hours of the day sunlight reflected off the crack and created a significant glare which made it difficult for Mr. Robinson's spouse to see through the windshield while driving.

65.    Thereafter, Mr. Robinson called Land Rover of Nashville, an authorized Land Rover dealership, informed the dealership about the circumstances of the windshield crack, that there was no observed impact to the windshield, and sought a repair or replacement windshield.

Moreover, Mr. Robison believed there was a defect with the windshield because even if there was an impact to the windshield, a small impact should not have caused the windshield to crack. Mr. Robinson previously owned other vehicles that experienced windshield impacts from small pebbles, but the impacts never resulted in chips or cracks to the windshields in those other vehicles.

66.     In response, Land Rover of Nashville claimed that Land Rover's warranty did not cover the windshield repair or replacement and declined to perform the repair under Land Rover's warranty.

67.     On June 16, 2022, Auto Glass Service replaced the windshield in the Robinson Vehicle and charged Mr. Robison $1,766.60 for the repair.

68.     Sometime in early July 2023, Mr. Robison experienced the Windshield Defect for the second time.  As Mr. Robinson's spouse was driving the Robinson Vehicle on the highway, she heard a loud pop and saw a crack appeared in the windshield.  Mr. Robinson's spouse did not observe anything impact the Robinson Vehicle windshield prior to the crack forming.

69.     Mindful of Land Rover of Nashville's prior refusal to cover repair under Land Rover's Warranty, Mr. Robinson had the windshield replaced by Jack Morris Auto Glass on July 11, 2023, for which Mr. Robinson paid $955.92.

70.     The replacement windshield lasted less than one day.  On the same day that Mr. Robinson's spouse picked the vehicle up from the dealership with the new windshield , a small rock struck the windshield, causing a large crack to form across the windshield.

71.     Mr. Robinson's spouse immediately returned the vehicle to Jack Morris Auto Glass who replaced the windshield again and charged Mr. Robinson $797.53 for the repair.

72.     In early April 2024, the Robinson Vehicle experienced the Windshield Defect for the fourth time.  As Mr. Robinson's spouse was driving the Robinson Vehicle on the highway, she heard a loud pop and saw a crack appeared in the windshield.  Mr. Robinson's spouse did not observe anything impact the Robinson Vehicle windshield prior to the crack forming.

73.     Mr. Robinson filed a claim with his automobile insurance carrier and had the windshield replaced by Jack Morris Auto Glass at a cost of $1,036.76; Mr. Robinson paid a $500.00 deductible and the rest of the cost of repair was covered through his automobile insurance policy.

74.     On July 11, 2024, Mr. Robinson, through his counsel, sent a letter to Land Rover advising it that the Robinson Vehicle suffered from the Windshield Defect and that Mr. Robinson was denied a replacement windshield under Land Rover's warranty.

75.     On August 18, 2024, Mr. Robison experienced the Windshield Defect for the fifth time. As Mr. Robinson was driving the Robinson Vehicle on the highway, with Mr. Robinson sitting in the passenger seat, they both heard a loud pop and saw a crack appeared in the bottom of the windshield.  As the day went on, the crack continued to spread across the whole windshield.

76.     Again, Mr. Robinson filed a claim with his automobile insurance carrier and had the windshield replaced; Mr. Robinson paid a $500.00 deductible and the rest of the cost of repair was covered through his automobile insurance policy.

77.     At all times, Mr. Robinson and his spouse have driven the Robinson Vehicle in a foreseeable manner and in the manner in which it was intended to be used.

### III.    Pamela Hughes

78.    On or about January 4, 2022, Ms. Hughes purchased a new 2022 Land Rover Defender, Vehicle Identification Number SALEX7RU5N2094218 (hereafter the "Hughes Vehicle") from Land Rover Chantilly, an authorized Land Rover dealership (hereinafter "Land Rover Chantilly") located in Chantilly, Virginia.

79.    Ms. Hughes paid $96,050.00, plus taxes, fees, and other charges, for the Hughes Vehicle.

80.    Passenger safety and reliability were important factors to Ms. Hughes' decision to purchase the vehicle. Prior to purchasing the 2022 Land Rover Defender, Ms. Hughes researched the vehicle by looking at the vehicle's specifications and features on Land Rover's website where the Land Rover Defender was described as durable and tough. Based on Land Rover's representations, Ms. Hughes was led to believe that the 2022 Land Rover Defender was, among other things, a safe, reliable, and high-quality vehicle, and Land Rover's representations induced her to purchase the vehicle.

81.    Prior to the purchase, Land Rover Chantilly assured Ms. Hughes that the Hughes Vehicle was accompanied by Jaguar Land Rover North America, LLC's New Vehicle Limited Warranty.

82.    In its New Vehicle Limited Warranty Land Rover promised to "correct defects in factory-supplied materials or factory workmanship" without charge within 4 years or 50,000 miles in service, whichever occurs first.

83.    Despite Ms. Hughes' research prior to purchasing the vehicle, neither Land Rover nor the selling dealership ever disclosed at the time of purchase that the 2022 Land Rover Defender contained the Windshield Defect. Indeed, Land Rover concealed this information from

consumers, and Ms. Hughes was not aware of, and did not have any reason to anticipate, that his vehicle was afflicted by the Windshield Defect when she purchased the vehicle.

84.     Land Rover's omissions were material to Ms. Hughes. If Land Rover had adequately disclosed these facts before Ms. Hughes purchased the vehicle, she would have learned of the concealed information and would not have bought the vehicle had she known the vehicle suffered from the Windshield Defect.

85.     Approximately four months after purchasing the vehicle, Ms. Hughes experienced the Windshield Defect as she was driving on a local street. Another car kicked up a small pebble that hit the Hughes Vehicle windshield, causing it to chip directly in her line of vision.  Ms. Hughes promptly had that chip filled in to avoid the windshield cracking.

86.     However, shortly thereafter, as Ms. Hughes was driving her vehicle, a small pebble hit her windshield again causing a large crack to appear. The windshield crack impeded driver's line of vision and was a distraction to Ms. Hughes when driving.

87.     On May 10, 2022, Ms. Hughes took her Vehicle to Land Rover Downtown Salt Lake, an authorized Land Rover dealership, informed the dealership about the circumstances of the windshield crack, and sought a repair or replacement windshield.  Moreover, Ms. Hughes believed there was a defect with the windshield because even if there was an impact to the windshield, a small impact should not have caused the windshield to crack.  Ms. Hughes previously owned other vehicles that experienced windshield impacts from small pebbles, but none of those impacts resulted in chips or cracks to the windshields in those other vehicles. Further, Ms. Hughes told the dealership she felt unsafe driving the vehicle out of fear that such a large crack across the windshield may case windshield to cave in.

88.     In response, Land Rover Downtown Salt Lake claimed that Land Rover warranty did not cover the windshield repair or replacement and declined to perform the repair under Land Rover's warranty.

89.     Land Rover Downtown Salt Lake proceed to replace the windshield in Ms. Hughes' vehicle and charged her approximately $2,100.00 for the repair.

90.     On December 7, 2022, Ms. Hughes experienced the Windshield Defect again when the windshield developed a crack after small pebble hit it on the windshield edge.  The crack quickly spread horizontally across the whole windshield, running slightly below the driver's line of vision.

91.     In late December 2022, Ms. Hughes took her Vehicle to Land Rover Denver, an authorized Land Rover dealership, informed the dealership about the circumstances of the windshield crack, and sought a replacement windshield.

92.     Land Rover Land Rover Denver proceed to replace the windshield in Ms. Hughes' vehicle and charged her $2,018.75 for the repair. It did not provide the replacement windshield under Land Rover's warranty.

93.     Following that windshield  replacement, and in the months that followed, Ms. Hughes experienced impacts from pebbles again. Such impacts caused the windshield to chip, and caused cracks to appear on the passenger side and in the middle of the windshield.  Given the high cost of windshield replacement, Ms. Hughes delayed the repair. However, once the cracks appeared on the driver side, impairing her line of vision,  Ms. Hughes sought a windshield replacement again.  However, on August 12, 2024, Ms. Hughes was told replacement windshields are on indefinite back order and not available.

94.    As of September 13, 2024, the Hughes Vehicle windshield has extensive cracking and has not been replaced due to the backorder.

95.    The windshield cracks impaired and continue to impair visibility out of the vehicle, because when Ms. Hughes drives the vehicle during certain hours of the day sunlight reflects off the cracks and creates a significant glare which make it difficult for Ms. Hughes to see through the windshield while driving.  Likewise, when Ms. Hughes drives the vehicle at night headlights reflect off the cracks and create a significant glare which make it difficult for Ms. Hughes to see through the windshield while driving.

96.    On August 14, 2024, Ms. Hughes, through her counsel, sent a letter to Land Rover advising it that the Hughes Vehicle suffered from the Windshield Defect and that Ms. Hughes was told by the dealership its repair would not be covered under Land Rover's warranty.

97.    At all times, Ms. Hughes has driven her vehicle in a foreseeable manner and in the manner in which it was intended to be used.

## FACTUAL ALLEGATIONS APPLICABLE TO ALL PLAINTIFFS AND THE CLASSES

### I.    The Windshield Defect

98.    After discontinuing its Defender line of Land Rover vehicles in the U.S. market in 1997, Land Rover re-released a fully re-designed Defender in June 2020 with its 2020 Defender model.

99.    Since then, it has sold over thirty thousand 2020-2022 Defender Class Vehicles across the United States.

100.    Land Rover has affirmatively represented that its Defender Class Vehicles are durable and tough. For example, on its website Land Rover stated "[t]he new model represents 70 years of innovation and improvement, honoring the vehicle's history for rugged solidity while

thoroughly remaining a Defender for the 21st century."[1]  In addition, on its website Land Rover touted the Defender's durability: "Featuring our toughest materials yet and tested to its very limits. The Defender has been designed for optimum durability."[2] Elsewhere on its website, Land Rover states the Defender is "made for impact," claiming the Class Vehicles' "Unique unibody architecture contributes to the Defender being one of the toughest and strongest vehicles we have ever created."[3]

101.    The Class Vehicles suffer from the Windshield Defect.  Specifically, as a result of the way the vehicles are manufactured and/or made and the use of deficient materials, the Class Vehicles' front windshields are not sufficiently strong and durable for normal driving conditions and their intended use, and the windshields crack, chip and/or fracture for no reason at all and/or under circumstances that would not cause non-defective windshields to similarly fail such as impact from a small pebble.  Accordingly, when Class Vehicle windshields crack and fail following a minor impact from a small pebble, the windshields do not fail because of the pebble but due to the defective nature of the windshields which are not strong or durable enough to handle normal driving conditions.

102.    The Windshield Defect presents a safety hazard that renders the Class Vehicles unreasonably dangerous to consumers due to, *inter alia*, the impact of the Defect on visibility as well as the Class Vehicles' structural integrity, and the potential for injury.

---

[1] https://web.archive.org/web/20200417210155/https://www.landroverusa.com/vehicles/defender/index.html (last visited Oct. 23, 2023).

[2] https://web.archive.org/web/20200923070334/https://www.landroverusa.com/vehicles/defender/index.html (last visited Oct. 23, 2023).

[3] https://web.archive.org/web/20200417210155/https://www.landroverusa.com/vehicles/defender/index.html (last visited Oct. 23, 2023).

103.    Class Vehicle owners report that where there has been no impact damage or a slight impact from a small pebble, or their vehicles sat stationary, their Class Vehicles windshields cracked, including replacement windshields previously replaced due to Defect:

- NHTSA Complaint No. 11433619, September 20, 2021 (Incident Date September 19, 2021): Problem statement: Windshield Issue: The windshield developed a sudden crack while the vehicle was stationary, with no external impact or action Conditions: stationary, outside temp: 97 deg Impacting: visibility and safety features such as cameras, sensor, and lane departure assist

- NHTSA Complaint No. 11435211, October 2, 2021 (Incident Date August 7, 2021): Driving along the road with no cars around, the windshield made a loud noise and a crack was formed coming from the passenger side A-pillar. The crack of course grew over time. No rock chip. Clearly a defective windshield. The dealer would not replace it under warranty even though it clearly started where a rock could not have chipped it.

- NHTSA Complaint No. 11439152, November 3, 2021 (Incident Date May 29, 2021): 2 cracked windshields, car has only 15K miles- TONS of Defender owners on FB groups and forums same- some one 4th and 5th windshields- current wait to new ones from UK is 2-4 months. Land Rover knows these are defective and won'y admit/recall, just passing this off to customer. A new windshield is $1800 a pop- people getting hit paying high deductible, getting pulled over, poor visibility, some have cracks so large that they can not operate their vehicle. Currently, I am in wait, no ETA for my 3rd new windshield- I have a large crack and 2 small chips from all separate incidents. Huge safety issue, bc cracks interfere with driver assist Dates of Cracks: Car has only 15K miles 1. May 29, 2021 2. August 18, 2021 People on New Defenders Group on Facebook have started survey for owners with the problem - and forums have tons of issues. Imagine all the owners who have only had one crack and just think it's bad luck and don't realize there's an issue?

- NHTSA Complaint No. 11453301, February 21, 2022 (Incident Date February 17, 2022): Easily cracked windshield. Less than 30 days owned and a small pebble cracked my windshield.

- NHTSA Complaint No. 11464909, May 16, 2022 (Incident Date May 14, 2022): For the SECOND time, my windshield cracked in the upper right corner with no impact. The second time, I wasn't even driving! The crack looks nearly identical, even as it runs. I paid for a new windshield the first time because they insisted

that a rock hit me, although none of the people in the car ever heard or saw that.
This time, I wasn't even driving.

- NHTSA Complaint No. 11470701, June 23, 2022 (Incident Date June 3, 2022):
  Windshield cracked for no reason. ie no chip caused by rock, etc. Happened while
  I was driving with no traffic.

104.    Further,  Land Rover refuses to repair or repair or replace the Windshield Defect
under its written warranty when given a reasonable opportunity to do so.   Land Rover has not
issued any bulletins or instructions to its dealerships regarding the Class Vehicle's windshields'
propensity to crack and chip or repairing the same, nor has Land Rover authorized its dealerships
to cover Class Vehicle windshield repair or replacement costs under Land Rover's warranty.   In
addition, Land Rover has refused to repair or replace the Plaintiffs' windshields under Land
Rover's warranty.  Likewise, as detailed in the NHTSA and online complaints reproduced below,
other Class Vehicle owners complain that Land Rover dealers charge them out-of-pocket for
repairs.

105.    Not only does Land Rover refuse to repair the Windshield Defect under its
warranty, but because of how widespread the issue is,  Land Rover often takes months to provide
Class Vehicle owners with replacement windshields.  For instance, as set forth above Plaintiffs
regularly had to wait months for replacement windshields.  Likewise, Class Vehicle owners have
complained to NHTSA of windshield wait times reaching "2-4 months":

- NHTSA Complaint No. 11439152, November 3, 2021 (Incident Date May 29,
  2021): 2 cracked windshields, car has only 15K miles- TONS of Defender owners
  on FB groups and forums same- some one 4th and 5th windshields- current wait
  to new ones from UK is 2-4 months. […]

106.    Moreover, on information and belief, when windshield repairs are performed by
Defendant's dealers (for charge), defective windshields are merely replaced with similarly

defective windshields.  Thus, Plaintiffs and Class Vehicle owners have required multiple replacement windshields:

- NHTSA Complaint No. 11439152, November 3, 2021 (Incident Date May 29, 2021): 2 cracked windshields, car has only 15K miles- TONS of Defender owners on FB groups and forums same- some one 4th and 5th windshields- current wait to new ones from UK is 2-4 months. Land Rover knows these are defective and won'y admit/recall, just passing this off to customer. A new windshield is $1800 a pop- people getting hit paying high deductible, getting pulled over, poor visibility, some have cracks so large that they can not operate their vehicle. Currently, I am in wait, no ETA for my 3rd new windshield- […]

107.    Land Rover had and has a duty to fully disclose the true nature of the Windshield Defect and the associated repair costs to Class Vehicle owners, among other reasons, because the Defect poses an unreasonable safety hazard; because Land Rover had and has exclusive knowledge or access to material facts about the Class Vehicles' front windshield that were and are not known to or reasonably discoverable by Plaintiffs and the other Class Members; and because Land Rover has actively concealed the Windshield Defect from its customers.  Because the windshield contained in each Class Vehicle is defective, each Class Vehicle windshield should be replaced by Land Rover free of charge regardless of whether the windshield has failed, or the facts and circumstances surrounding any failure.

## II.    Land Rover's Knowledge of the Defect

108.    Before Land Rover sold Plaintiffs their Class Vehicles, Land Rover was on notice that the Class Vehicles suffered from the Windshield Defect, however Land Rover failed to disclose the existence of the defect to Plaintiffs or any other Class Vehicle owner.

109.    Land Rover became aware of the Windshield Defect through sources not available to Plaintiffs and Class Members, including, but not limited to, pre-production testing, pre-production design failure mode and analysis data, production design failure mode and

analysis data, early consumer complaints made exclusively to Land Rover's network of dealers and directly to Land Rover, aggregate warranty data compiled from Land Rover's network of dealers, testing conducted by Land Rover in response to consumer complaints, and repair order and parts data received by Land Rover from Land Rover's network of dealers.

110.    On information and belief, during the pre-release process of designing, manufacturing, engineering, and performing durability testing on the Class Vehicles, which would have likely occurred between 2019 and early 2020 before Land Rover began selling the Class Vehicles in June 2020, Land Rover necessarily would have gained comprehensive and exclusive knowledge about the Class Vehicles' windshields: the types and properties of materials used to make them, including their durability and whether those materials would weaken over time regardless of wear and use; the basic engineering principles behind their construction; the forces and stresses the windshields would face; when and how the windshields would fail; and the cumulative and specific impacts on the windshields caused by wear and use, the passage of time, and environmental factors.

111.    An adequate pre-release analysis of the design, engineering, and manufacture of the windshields used for the Class Vehicles would have revealed to Land Rover that as a result of the manner in which the windshields were made and assembled and the materials used, the windshields were insufficiently strong and durable for the intended use. Thus, during the pre-release analysis stage of the Class Vehicles, Land Rover would have known that the windshield installed in Class Vehicles was defective, would crack spontaneously or as a result of minor impacts that should not have resulted in windshield cracks (such as impact from a small pebble), and would pose a safety risk to owners/lessees and the motoring public.  Despite that such testing on the Class Vehicles revealed the Windshield Defect to Land Rover, Land Rover failed to

remedy the manufacturing processes with the Class Vehicles before putting the vehicles into production and selling them to the public.

112.    Upon information and belief, Land Rover also would have known about the Windshield Defect because of the higher-than-expected number of replacement windshields ordered from Land Rover, which should have alerted Land Rover that this was a defective part. Upon information and belief, Land Rover service centers use Land Rover replacement parts that they order directly from Land Rover.  Moreover, as set forth in the consumer complaints below, shortly after Land Rover began selling the Class Vehicle, Class Vehicle windshields were on backorder due to the higher-than-expected number of replacement windshields ordered by Land Rover dealerships.  Therefore, Land Rover would have detailed and accurate data regarding the number and frequency of replacement part orders, including replacement windshields.  The ongoing sales of replacement windshields and the fact that windshields were being ordered at such high rates (and at rates higher than windshields for other Land Rover vehicles) that the parts were on backorder, was known to Land Rover and would have alerted Land Rover that its windshields were defective, failed and cracked significantly more often than non-defective windshields, and posed a safety risk early on.

113.    Land Rover also knew about the Windshield Defect because numerous consumer complaints regarding windshield failure were made directly to Land Rover and its dealerships. The large number of complaints, and the consistency of their descriptions of windshield failure alerted Land Rover to this serious Defect affecting the Class Vehicles.  The full universe of complaints made directly to Land Rover about the Windshield Defect is information presently in the exclusive custody and control of Land Rover and is not yet available to Plaintiffs prior to discovery.  However, upon information and belief, many Class Vehicle owners, including the

25

Plaintiffs, complained directly to Land Rover and Land Rover dealerships and service centers about the repeated windshield failures their Vehicles experienced.

114.    Because the Windshield Defect can and does manifest almost immediately – often within weeks of the Class Vehicles first being driven – Land Rover began receiving notification of the higher-than-expected number of replacement windshields ordered from Land Rover and consumer complaints regarding windshield failure within weeks after Land Rover began selling the Class Vehicles in June 2020.

**III.    The NHTSA Complaints and Online Discussions of the Defect**

115.    Upon information and belief, thousands of purchasers and lessees of the Class Vehicles have experienced the Windshield Defect.  Given how widespread the issue is and the fact that windshields often crack within weeks of their sale, Class Vehicle owners have been complaining about the Windshield Defect directly to Land Rover since 2020 and have been posting such complaints online since at least early 2021.

116.    Automobile manufacturer and distributors maintain presence and regularly monitor social media for vehicle owners concerns and, upon information and belief, Land Rover maintains presence on and regularly monitors social media for such content too, has done so since it began selling the Class Vehicles, and published social media user guidelines on its website.[4]

117.    For instance on www.LandRoverForums.com, a Land Rover vehicle enthusiast website that upon information and belief Land Rover regularly monitors, a January 15, 2021 post written by a Class Vehicle owner noted that they "have a 20 defender P400- the windshield

---

[4] https://www.landroverusa.com/social-media.html (last visited Jun. 29, 2022).

cracked mid Dec, and [they] had a new one on order since then."[5] Other Class Vehicle owners responded that they had near-identical experiences; one owner complained that their "windshield cracked for no reason" and another similarly complained, "My 110 with 7500 miles just cracked last week. No impact, no crazy stuff like putting cold water on hot glass. Mine started right at the top center, went straight down about 6 inches and then took a sharp bend to the passenger side and is running horizontal now."[6] Other Class Vehicle owners likewise complained: "Cracked this morning on the drive into work...started driver's side at the bottom. No rock, no damage other than the crack."[7] And other Class Vehicle owners complained on about having multiple cracks.

118.    Similarly, on Facebook, Class Vehicle owners have been complaining about the Windshield Defect, including in the "The New Defender Owners Group" Facebook Group, since Land Rover began selling the vehicles.  For instance, on October 8, 2021, one Class Vehicle owner published a post stating, "Got my first windshield crack today. Was surprised to learn that the dealership doesn't service its own vehicles' windshields. I called the company they use and was told 4 - 6 weeks for a replacement and to continue driving with no worries about safety. They assured me the windshield will not shatter or cause any further problems in the meantime. Does anyone have firsthand experience with this issue?"[8]  In response, other Class Vehicle owners commented that they too had already experienced the Windshield Defect.

---

[5] https://landroverforums.com/forum/2020-defender-60/front-windshield-104029/ (last visited Jun. 27, 2022).

[6] https://landroverforums.com/forum/2020-defender-60/cracked-windshield-107552/ (last visited Jun. 27, 2022).

[7] https://landroverforums.com/forum/2020-defender-60/cracked-windshield-110590/ (last visited Jun. 27, 2022).

[8] https://www.facebook.com/groups/686273281850563/permalink/1229541830857036/ (last visited Jun. 27, 2022).

119.    Likewise, on Facebook in the New Defender Owners Group, Class Vehicle owners conducted polls to gather information about Defender vehicles that experienced the Windshield Defect, with one such poll identifying 268 Class Vehicle owners that experienced the Windshield Defect[9] and another poll identifying 47 owners.[10]

120.    Class Vehicle owners have continued to post similar such Facebook posts and comments about the Windshield Defect to date. For instance, on June 25, 2022, one owner posted in the same the New Defender Owners Group "My 4th crack happened at 19k miles. This has to stop."[11]

121.    Moreover, Land Rover monitors customers' complaints made to the National Highway Traffic Safety Administration ("NHTSA"). Federal law requires automakers like Land Rover to be in close contact with NHTSA regarding potential auto defects, including imposing a legal requirement (backed by criminal penalties) compelling the confidential disclosure of defects and related data by automakers to NHTSA, including field reports, customer complaints, and warranty data. *See* TREAD Act, Pub. L. No. 106-414, 114 Stat.1800 (2000).

122.    Automakers also have a legal obligation to identify and report emerging safety-related defects to NHTSA under the Early Warning Reporting Requirements. *Id*. Similarly, automakers monitor NHTSA databases for consumer complaints regarding their automobiles as part of their ongoing obligation to identify potential defects in their vehicles, including safety-related defects. *Id*. Thus, Land Rover knew or should have known of the many complaints about

---

[9] https://www.facebook.com/groups/686273281850563/permalink/1244027399408479/ (last visited Jun. 27, 2022).

[10] https://www.facebook.com/groups/686273281850563/permalink/1252213525256533/ (last visited Jun. 27, 2022).

[11] https://www.facebook.com/groups/686273281850563/permalink/1400654720412412/ / (last visited Jun. 27, 2022).

the Windshield Defect logged by NHTSA ODI, and the content, consistency, and large number of those complaints alerted, or should have alerted, Land Rover to the Windshield Defect.

123.    Indeed, complaints concerning the Windshield Defect are one of the most common complaint topic amongst NHTSA complaints regarding the Class Vehicles.  The below example complaints concerning 2020-2022 Land Rover Defender vehicles, filed by consumers with the NHTSA and posted on the Internet, which on information and belief Land Rover actively monitored during the relevant time period, demonstrate that the Defect is widespread and dangerous, and that Land Rover has known about the defect at all relevant times:

***2020 Defender NHTSA Complaints*:**

- NHTSA Complaint No. 11433648, September 20, 2021 (Incident Date August 18, 2021): My windshield cracked with no apparent strike with under 5K miles on the vehicle. Researching this, LOTS of people experience broken windshields on Defenders and Land Rover products. There are lots of discussion in online owners' forums about the frequency of this and some notion that JLR uses glass that is thinner than other manufacturers.

- NHTSA Complaint No. 11434894, September 29, 2021 (Incident Date September 20, 2021): My front windshield cracked to the point of requiring replacement with neither notice nor reasonable cause (no impact, no crack starting point, besides the bottom edge, no temperature gradients, no pressure applied to the windshield).

- NHTSA Complaint No. 11435211, October 2, 2021 (Incident Date August 7, 2021): Driving along the road with no cars around, the windshield made a loud noise and a crack was formed coming from the passenger side A-pillar. The crack of course grew over time. No rock chip. Clearly a defective windshield. The dealer would not replace it under warranty even though it clearly started where a rock could not have chipped it.

- NHTSA Complaint No. 11491779, November 1, 2022 (Incident Date October 14, 2022): My 2020 Defender has had three incidences of the windshield cracking due to the smallest pebble. The first two cracks, I had professionally sealed. The latest incident involved a pebble so small that I couldn't see it. In fact, the pebble was so tiny that a point of contact on the windshield can barely be observed. However, it caused the windshield to crack clear across the middle, impairing visibility and creating an unsafe driving experience. This is, I believe, the seventh Land Rover windshield that I have had the misfortune to have crack on me over the years. One Range Rover windshield cracked while sitting in the driveway with no projectiles

involved. Another cracked in cooler overnight weather. These windshields are clearly defective and Land Rover is aware of the problem. This is why the dealership offers a very pricey windshield package as an option when you purchase the vehicle. I have called Land Rover corporate again in this instance because I'm fed up with paying $1800 to repair a defective bit of glass, only to have another crack appear and be forced to repair or replace that as well. Land Rover Corporate said that a pebble constituted "outside damage" and the windshield would not be covered under warranty. However, a driver does purchase a car under the presumption that the glass would be safe if struck by a tiny object or if taken through a car wash--as occurred with my previous Range Rover. Taken together, I do request that this consumer safety board review this issue as I know for a fact that I am not the only one concerned about the safety and reliability of the Land Rover windshields.

*2021 Defender NHTSA Complaints*:

- NHTSA Complaint No. 11433619, September 20, 2021 (Incident Date September 19, 2021): Problem statement: Windshield Issue: The windshield developed a sudden crack while the vehicle was stationary, with no external impact or action Conditions: stationary, outside temp: 97 deg Impacting: visibility and safety features such as cameras, sensor, and lane departure assist

- NHTSA Complaint No. 11438618, October 29, 2021 (Incident Date August 2, 2021): The contact owns a 2021 Land Rover Defender. The contact stated that the windshield cracked without impact, causing electrical issues. The vehicle was taken to a local dealer where it was diagnosed but not repaired. The manufacturer was informed of the failure and told the contact that they were unable to assist. The failure mileage was approximately 1,500.

- NHTSA Complaint No. 11439215, November 3, 2021 (Incident Date September 21, 2021): My windshield broke in only owning this car 30 days I hear from other people that this is there 3 time replacement. I think this is a design issues and should be looked into.

- NHTSA Complaint No. 11439152, November 3, 2021 (Incident Date May 29, 2021): 2 cracked windshields, car has only 15K miles- TONS of Defender owners on FB groups and forums same- some one 4th and 5th windshields- current wait to new ones from UK is 2-4 months. Land Rover knows these are defective and won'y admit/recall, just passing this off to customer. A new windshield is $1800 a pop-people getting hit paying high deductible, getting pulled over, poor visibility, some have cracks so large that they can not operate their vehicle. Currently, I am in wait, no ETA for my 3rd new windshield- I have a large crack and 2 small chips from all separate incidents. Huge safety issue, bc cracks interfere with driver assist Dates of Cracks: Car has only 15K miles 1. May 29, 2021 2. August 18, 2021 People on New Defenders Group on Facebook have started survey for owners with the problem - and forums have tons of issues. Imagine all the owners who have only had one crack and just think it's bad luck and don't realize there's an issue?

- NHTSA Complaint No. 11443713, December 13, 2021 (Incident Date December 12, 2021): My windshield spontaneously cracked. No impact, just a sudden cracking noise and the crack appeared shortly thereafter. I was in the car at the time. No impact with anything was noted. (I have had chips many times and this was not that sound). The crack starts at the lower midline of the windshield, extends up about 9" before arcing horizontally. This crack is near identical to at least three other owners of the same car. All had their windshield spontaneously crack in the same manner i describe. No impact noted. The pattern of crack and location is always lower border to the midline of the windshield. One fellow owner is a friend who joked about when I'd have to replace my windshield in my brand new Defender. He experienced the same thing. I believe it may relate to use of the defogger. Heat in the car with colder temps outside. I'm in WA so no extreme temps here. was about 35F outside when the defogger was used. That is the only thing I can think of. Pictures can be provided upon request. The cracks are too similar in location and dimension and too spontaneous (no strike noted) to be anything other that an integral design flaw. Part: Windshield Safety issue: Windshield integrity contributes to the strength of the vehicle in a rollover/accident so I believe this flaw has a direct safety impact for owners of the new Land Rover Defender. Dealer: As this is glass, dealer will not entertain warranty issues but it appears to be just that. I won't waste time contacting dealership. Others have on this matter. No point. No warning signs It has not been inspected by anyone

- NHTSA Complaint No. 11451131, February 9, 2022 (Incident Date November 8, 2021): Component: windshield Issue: under adverse temperature conditions ( e.g. high temp or low temp ) the windshield can develop a sudden crack, without any external impact. Conditions: above 95 deg F or below 30 deg F ; Status: vehicle could be stationary, or in motion; Hazard to occupants: Yes; Safety concern: yes, if the vehicle is in motion the size of the crack can develop very fast and create a catastrophic failure which may impact the occupants. JLR - fails even to acknowledge any issues and denies any design fault or responsibility.

- NHTSA Complaint No. 11451600, February 11, 2022 (Incident Date March 5, 2022): Windshield spontaneously cracked while parked (no impact). Crack was near top center and runs across the safety camera system. Crack was also instantaneously 1.5 foot long and partially obstructs driver's view. Scheduled for inspection by dealership - police, insurance has not been involved. No warning lamps or messages have appeared before or after the crack formed.

- NHTSA Complaint No. 11453301, February 21, 2022 (Incident Date February 17, 2022): Easily cracked windshield. Less than 30 days owned and a small pebble cracked my windshield.

- NHTSA Complaint No. 11455637, March 7, 2022 (Incident Date February 10, 2022): 12 inch crack developed overnight. No signs of rock hit or any other impact.

- NHTSA Complaint No. 11457497, March 20, 2022 (Incident Date April 1, 2021): Shortly after buying the car a small people hit the windshield while driving on the

highway and broke the windshield right in the eyesight of the driver side. It was a little larger than a quarter in size and took 3 months for replacement due to back order. 2 weeks after the replacement the windshield spontaneously cracked while driving from the middle base of the windshield up and towards the passenger side about 20 inches long. Nothing hit the car, it just cracked. No heater or defrost was on. It took 6 months for replacement due to Land Rover ordering the wrong windshield and back orders. During this time the windshield got 3 more chips from pebbles/small rocks while driving. 2 weeks after this replacement a small rock hit the windshield on the driver side and chipped it about the size of a nickel. I am getting this filled tomorrow. This is clearly a defect with the windshield as I have had maybe 2 broken windshields in my life up to this point.

- NHTSA Complaint No. 11462763, April 29, 2022 (Incident Date April 29, 2022): Windshield cracked spontaneously while washing. No chips, no damage and hand washed vehicle. Crack is blocking visibility and starts at top of windshield and spiders into 3 cracks.

- NHTSA Complaint No. 11469526, June 16, 2022 (Incident Date May 22, 2022): My windshield crack on its own when it was not even being driven. It appears to be a stress crack as it is a small V at the top center comes down the middle and across the passenger side. Only owned the car a few months and barely driven. I took to the dealer and they said they wouldn't chance covering by warranty out of fear corporate would deny the claim. Spoke with corporate and after a month they finally responded and said they wouldn't cover or have anyone further inspect as they rely on their dealers only and if I was satisfied I should go through arbitration. This appears to be a known issue now and concerning that they wouldn't want to investigate further. My windshield is heated and I wonder if there is a design flaw in the filament put inside the glass? Upsetting to deal with and shocked by lack or responsiveness from Land Rover.

- NHTSA Complaint No. 11470350, June 21, 2022 (Incident Date June 21, 2022): My land Rover Defender is 5 months old with 5,765 miles on it. Driving through the car wash today the windshield "popped" and a large crack started in the top center and spread out both directions in what looks like a mustache. No chip, vehicle was not moving and the windshield failed. Unacceptable.

- NHTSA Complaint No. 11470701, June 23, 2022 (Incident Date June 3, 2022): Windshield cracked for no reason. ie no chip caused by rock, etc. Happened while I was driving with no traffic.

- NHTSA Complaint No. 11471080, June 27, 2022 (Incident Date June 26, 2022): Windshield crack from no none source, appears to be pressure related. Happened at highway speed. Reading Defender forums this has happened to many customers, some 2-3 times.

- NHTSA Complaint No. 11478479, August 9, 2022 (Incident Date August 9, 2022): 2 complete windshield replacements needed since taking delivery June 2021. This

incident was a small chip from a rock on the road that then spread across bottom half of drivers side windshield. These incidents are not isolated, seems other owners are reporting the same thing on this vehicle.

- NHTSA Complaint No. 11481788, August 29, 2022 (Incident Date August 21, 2022): The windshield spontaneously cracked from the middle of the pillar on the driver's side to the center of the windshield. No rock strikes.

### 2022 Defender NHTSA Complaints:

- NHTSA Complaint No. 11439215, November 3, 2021 (Incident Date September 21, 2021): My windshield broke in only owning this car 30 days I hear from other people that this is there 3 time replacement. I think this is a design issues and should be looked into.

- NHTSA Complaint No. 11443713, December 13, 2021 (Incident Date December 12, 2021): My windshield spontaneously cracked. No impact, just a sudden cracking noise and the crack appeared shortly thereafter. I was in the car at the time. No impact with anything was noted. (I have had chips many times and this was not that sound). The crack starts at the lower midline of the windshield, extends up about 9" before arcing horizontally. This crack is near identical to at least three other owners of the same car. All had their windshield spontaneously crack in the same manner i describe. No impact noted. The pattern of crack and location is always lower border to the midline of the windshield. One fellow owner is a friend who joked about when I'd have to replace my windshield in my brand new Defender. He experienced the same thing. I believe it may relate to use of the defogger. Heat in the car with colder temps outside. I'm in WA so no extreme temps here. was about 35F outside when the defogger was used. That is the only thing I can think of. Pictures can be provided upon request. The cracks are too similar in location and dimension and too spontaneous (no strike noted) to be anything other that an integral design flaw. Part: Windshield Safety issue: Windshield integrity contributes to the strength of the vehicle in a rollover/accident so I believe this flaw has a direct safety impact for owners of the new Land Rover Defender. Dealer: As this is glass, dealer will not entertain warranty issues but it appears to be just that. I won't waste time contacting dealership. Others have on this matter. No point. No warning signs It has not been inspected by anyone.

- NHTSA Complaint No. 11451600, February 11, 2022 (Incident Date February 10, 2022): Windshield spontaneously cracked while parked (no impact). Crack was near top center and runs across the safety camera system. Crack was also instantaneously 1.5 foot long and partially obstructs driver's view. Scheduled for inspection by dealership - police, insurance has not been involved. No warning lamps or messages have appeared before or after the crack formed.

- NHTSA Complaint No. 11453301, February 21, 2022 (Incident Date February 17, 2022): Easily cracked windshield. Less than 30 days owned and a small pebble cracked my windshield.

- NHTSA Complaint No. 11462763, April 29, 2022 (Incident Date April 29, 2022): Windshield cracked spontaneously while washing. No chips, no damage and hand washed vehicle. Crack is blocking visibility and starts at top of windshield and spiders into 3 cracks.

- NHTSA Complaint No. 11464909, May 16, 2022 (Incident Date May 14, 2022): For the SECOND time, my windshield cracked in the upper right corner with no impact. The second time, I wasn't even driving! The crack looks nearly identical, even as it runs. I paid for a new windshield the first time because they insisted that a rock hit me, although none of the people in the car ever heard or saw that. This time, I wasn't even driving.

- NHTSA Complaint No. 11469526, June 16, 2022 (Incident Date May 22, 2022): My windshield crack on its own when it was not even being driven. It appears to be a stress crack as it is a small V at the top center comes down the middle and across the passenger side. Only owned the car a few months and barely driven. I took to the dealer and they said they wouldn't chance covering by warranty out of fear corporate would deny the claim. Spoke with corporate and after a month they finally responded and said they wouldn't cover or have anyone further inspect as they rely on their dealers only and if I was satisfied I should go through arbitration. This appears to be a known issue now and concerning that they wouldn't want to investigate further. My windshield is heated and I wonder if there is a design flaw in the filament put inside the glass? Upsetting to deal with and shocked by lack or responsiveness from Land Rover.

- NHTSA Complaint No. 11470350, June 21, 2022 (Incident Date June 21, 2022): My land Rover Defender is 5 months old with 5,765 miles on it. Driving through the car wash today the windshield "popped" and a large crack started in the top center and spread out both directions in what looks like a mustache. No chip, vehicle was not moving and the windshield failed. Unacceptable.

- NHTSA Complaint No. 11481788 / 11493632, November 15, 2022 (Incident Date September 23, 2022): I Have a 2022 Land Rover defender 110 and it had 8,000 miles on it. One day I was driving and the windshield just cracked, nothing had hit it and no visible chips were present. I have yet to receive a replacement windshield.

124. By contrast, NHTSA shows zero complaints of windshields cracking or chipping in 2020-2022 Land Rover vehicles other than Defender, and in the years 2015 through 2019 only five windshield cracking or chipping complaints were posted, averaging one complaint a year. Thus the volume and frequency of such complaints alerted Land Rover that the Class Vehicles suffered from defective windshields.

125.    Although Land Rover was aware of the widespread nature of the Windshield Defect in the Class Vehicles, and that it posed grave safety risks, Land Rover has failed to take adequate steps to notify all Class Vehicle owners of the Defect and provide relief.

126.    Customers have reported the Windshield Defect in the Class Vehicles to Land Rover directly and through its dealers.  Defendant is fully aware of the Windshield Defect contained in the Class Vehicles.  Moreover, Defendant had the ability to notify Class Vehicle owners about the Windshield Defect directly and via its authorized dealerships at the time of sale and thereafter. Nevertheless, Defendant actively concealed the existence and nature of the Defect from Plaintiffs and the other Class Members at the time of purchase or repair and thereafter. Specifically, Defendant:

    a.  failed to disclose, at the time of purchase or repair and thereafter, any and all known material defects or material nonconformities of the Class Vehicles, including the Windshield Defect;

    b.  failed to disclose, at the time of purchase or repair and thereafter, that the Class Vehicles and their front windshields were not in good working order, were defective, and were not fit for their intended purpose; and,

    c.  failed to disclose and/or actively concealed the fact that the Class Vehicles and their front windshields were defective, despite the fact that Defendant learned of the Windshield Defect as early as 2020.

127.    Defendant has deprived Class Members of the benefit of their bargain, exposed them all to a dangerous safety Defect, and caused them to expend money at its dealerships or other third-party repair facilities and/or take other remedial measures related to the Windshield Defect contained in the Class Vehicles.

128.    Defendant has not recalled the Class Vehicles to repair the Windshield Defect, has not issued any bulletins or instructions to its dealerships regarding the Windshield Defect, has not offered to its customers a suitable repair or replacement of parts related to the Windshield Defect free of charge, and has not reimbursed all Class Vehicle owners and leaseholders who incurred costs for repairs related to the Windshield Defect.

129.    Class Members have not received the value for which they bargained when they purchased or leased the Class Vehicles.

130.    As a result of the Windshield Defect, the value of the Class Vehicles has diminished, including without limitation, the resale value of the Class Vehicles.  Reasonable consumers, like Plaintiffs, expect and assume that a vehicle's front windshield is not defective and will not crack, chip and/or fracture for no reason at all or under circumstances that would not cause non-defective windshields to similarly fail.  Plaintiffs and Class Members further expect and assume that Land Rover will not sell or lease vehicles with known safety defects, such as the Windshield Defect, and will fully disclose any such defect to consumers prior to purchase or offer a suitable non-defective repair.  They do not expect that Land Rover would fail to disclose the Windshield Defect to them, and then refused to remedy the defect under Land Rover's warranty.

## CLASS ACTION ALLEGATIONS

### A.  The Classes

131.    Pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), 23(b)(3), and/or 23(c)(5), Plaintiffs seek to represent the following state-specific classes:

**California Class:** All persons or entities who purchased or leased any 2020-2022 Land Rover Defender vehicle in the State of California (the "California Class")

**Tennessee Class:** All persons or entities who purchased or leased any 2020-2022 Land Rover Defender vehicle in the State of Tennessee (the "Tennessee Class")

**Virginia Class:** All persons or entities who purchased or leased any 2020-2022 Land Rover Defender vehicle in the State of Virginia (the "Virginia Class")

132.    Defendant and its employees or agents are excluded from the Class.

### B.  Numerosity

133.    Upon information and belief, the Classes are each so numerous that joinder of all members is impracticable. While the exact number and identities of individual members of the Classes are unknown at this time, such information being in the sole possession of Defendant and obtainable by Plaintiffs only through the discovery process, Plaintiffs believe, and on that basis allege, that thousands of Class Vehicles have been sold and leased nationwide and throughout California, Tennessee, and Virginia.

### C.  Common Questions of Law and Fact

134.    There are questions of law and fact common to the Classes that predominate over any questions affecting only individual Class members.  These questions include:

a.    whether the Class Vehicles suffer from the Windshield Defect;

b.    whether the Windshield Defect constitutes an unreasonable safety hazard;

c.    whether Defendant knows about the Windshield Defect and, if so, how long Defendant has known of the Defect;

d.    whether the defective nature of the Class Vehicles' front windshield constitutes a material defect;

e.    whether Defendant had and has a duty to disclose the defective nature of the Class Vehicles' front windshield to Plaintiffs and the other Class Members;

f.      whether Plaintiffs and the other Class Members are entitled to equitable relief, including, but not limited to, a preliminary and/or permanent injunction;

g.      whether Defendant knew or reasonably should have known of the Windshield Defect contained in the Class Vehicles before it sold or leased them to Class Members; and

h.      Whether Defendant breached its express warranty and the implied warranty of merchantability, engaged in fraudulent concealment and unjust enrichment, and whether Defendant violated the California Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.*, California Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200, *et seq.*, Tennessee Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq.*, and Virginia Consumer Protection Act, Va. Code Ann. § 59.1-196, *et seq.*, as alleged in this Complaint.

### D.  Typicality

135.    The Plaintiffs' claims are typical of the claims of the Classes since Plaintiffs purchased or leased defective Class Vehicles, as did each member of the Classes. Furthermore, Plaintiffs and all members of the Classes sustained economic injuries arising out of Defendant's wrongful conduct.  Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all absent Class members.

### E.  Protecting the Interests of the Class Members

136.    Plaintiffs will fairly and adequately protect the interests of the Classes and have retained counsel experienced in handling class actions and claims involving unlawful business practices.  Neither Plaintiffs nor their counsel has any interest which might cause them not to vigorously pursue this action.

### F.   Proceeding Via Class Action is Superior and Advisable

137.    A class action is the superior method for the fair and efficient adjudication of this controversy.  The injury suffered by each individual Class member is relatively small in comparison to the burden and expense of individual prosecution of the complex and extensive litigation necessitated by Defendant's conduct.  It would be virtually impossible for members of the Classes individually to redress effectively the wrongs done to them.  Even if the members of the Classes could afford such individual litigation, the court system could not.  Individualized litigation presents a potential for inconsistent or contradictory judgments.  Individualized litigation increases the delay and expense to all parties, and to the court system, presented by the complex legal and factual issues of the case.  By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, an economy of scale, and comprehensive supervision by a single court.  Upon information and belief, members of the Classes can be readily identified and notified based on, *inter alia*, Defendant's vehicle identification numbers, warranty claims, registration records, and database of complaints.

138.    Defendant has acted, and refused to act, on grounds generally applicable to the Classes, thereby making appropriate final equitable relief with respect to the Classes as a whole.

### FIRST CAUSE OF ACTION
### Fraudulent Concealment

### (Plaintiffs on behalf of the California, Tennessee, and Virginia Classes)

139.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

140.    By affirmatively misrepresenting the Class Vehicles as durable and tough, and by failing to disclose and concealing the defective nature of the Class Vehicles' front windshield

from Plaintiffs and Class Members, Land Rover concealed and suppressed material facts concerning the performance and quality of the Class Vehicles.

141.    Defendant knew that the Class Vehicles' front windshields suffered from an inherent defect, were defectively manufactured or made, would fail prematurely, and were not suitable for their intended use.

142.    Defendant was under a duty to Plaintiffs and the Class Members to disclose the defective nature of the Class Vehicles' front windshields and/or the associated repair costs because:

a.    Defendant was in a superior position to know the true state of facts about the safety defect contained in the Class Vehicles' front windshields;

b.    Defendant knew that the Class Vehicles suffered from an inherent defect, were defectively manufactured, and were not suitable for their intended use;

c.    Plaintiffs and the Class Members could not reasonably have been expected to learn or discover that their front windshields have a dangerous safety defect until after they purchased the Class Vehicles; and,

d.    Defendant knew that Plaintiffs and the Class Members could not reasonably have been expected to learn about or discover the Windshield Defect.

143.    On information and belief, Land Rover still has not made full and adequate disclosures and continues to defraud consumers by concealing material information regarding the Windshield Defect and the performance and quality of Class Vehicles.

144.    The facts concealed or not disclosed by Defendant to Plaintiffs and Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

145.    Plaintiffs and the Classes relied on Defendant to disclose material information it knew, such as the defective nature of the windshields in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

146.    By failing to disclose the Windshield Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

147.    The facts concealed or not disclosed by Defendant to Plaintiffs and the other Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

148.    Had Plaintiffs and other Class Members known that the Class Vehicles suffer from the Windshield Defect, they would not have purchased the Class Vehicles or would have paid less for them.

149.    Plaintiffs and the other Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Windshield Defect.  That is the reasonable and objective consumer expectation for vehicles.

150.    As a result of Defendant's misconduct, Plaintiffs and the other Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective and require repairs or replacement parts and are worth less money because of the Defect.

151.    Accordingly, Land Rover is liable to Plaintiffs and Class Members for damages in an amount to be proven at trial.

152.    Land Rover's actions and omissions were done maliciously, oppressively, deliberately, with intent to defraud, and in reckless disregard of Plaintiffs' and the Class's rights

and well-being, to enrich Land Rover. Land Rover's conduct warrants an assessment of punitive damages in an amount sufficient to deter such conduct in the future, which amount is to be determined according to proof.

153.    Furthermore, as the intended and expected result of its fraud and conscious wrongdoing,  Land Rover has profited and benefited from Plaintiffs' and Class Members' purchase of Class Vehicles containing the Windshield Defect.  Land Rover has voluntarily accepted and retained these profits and benefits with full knowledge and awareness that, as a result of Land Rover's misconduct alleged herein, Plaintiffs and Class Members were not receiving vehicles of the quality, nature, fitness, or value that had been represented by Land Rover, and that a reasonable consumer would expect.

154.    Land Rover has been unjustly enriched by its fraudulent, deceptive, and otherwise unlawful conduct in connection with the sale and lease of Class Vehicles and by withholding benefits from Plaintiffs and Class Members at the expense of these parties. Equity and good conscience militate against permitting Land Rover to retain these profits and benefits, and Land Rover should be required to make restitution of its ill-gotten gains resulting from the conduct alleged herein.

155.    Plaintiffs Seiber, Robinson, and Hughes seek damages and injunctive and equitable relief for themselves and for the California, Tennessee, and Virginia Classes.

## SECOND CAUSE OF ACTION
### Unjust Enrichment

**(Plaintiffs on behalf of the California, Tennessee, and Virginia Classes)**

156.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

157.    Land Rover has long known that about the Windshield Defect which it concealed and failed to disclose to Plaintiffs and Class Members.

158.    As a result of its fraudulent acts and omissions related to the Windshield Defect, Land Rover obtained monies which rightfully belong to Plaintiffs and the Class Members to the detriment of Plaintiffs and Class Members.

159.    Land Rover appreciated, accepted, and retained the non-gratuitous benefits conferred by Plaintiffs and the proposed Class Members who, without knowledge of the Windshield Defect, paid a higher price for their vehicles which actually had lower values.   Land Rover also received monies for vehicles that Plaintiffs and the Class Members would not have otherwise purchased or leased.

160.    It would be inequitable and unjust for Land Rover to retain these wrongfully obtained profits.

161.    Land Rover's retention of these wrongfully obtained profits would violate the fundamental principles of justice, equity, and good conscience.

162.    As a result of Defendant's unjust enrichment, Plaintiffs and Class Members have suffered damages.

163.    Plaintiffs do not seek restitution under their Unjust Enrichment claim. Rather, Plaintiffs and Class Members seek non-restitutionary disgorgement of the financial profits that Defendant obtained as a result of its unjust conduct.

164.    Additionally, Plaintiffs seek injunctive relief to compel Defendant to offer, under warranty, remediation solutions that Defendant identifies. Plaintiffs also seek injunctive relief enjoining Defendant from further deceptive distribution, sales, and lease practices with respect to Class Vehicles, enjoining Defendant from selling the Class Vehicles with misleading information

concerning the Windshield Defect; compelling Defendant to provide Class members with adequate repairs or with replacement components that do not contain the defects alleged herein; and/or compelling Defendant to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed. Money damages are not an adequate remedy for the above requested non-monetary injunctive relief.

### THIRD CAUSE OF ACTION
**Violation of the California Consumers Legal Remedies Act,**
**Cal. Civil Code §§ 1750, *et seq.***

**(Plaintiff Seiber on behalf of the proposed California Class)**

165.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

166.    The California Consumers Legal Remedies Act, Cal. Civil Code §§ 1750, *et seq.* ("CLRA") prohibits various deceptive practices in connection with the conduct of a business providing goods, property, or services to consumers primarily for personal, family, or household purposes.  The self-declared purposes of the CLRA are to protect consumers against unfair and deceptive business practices and to provide efficient and economical procedures to secure such protection. Cal. Civil Code § 1760.

167.    Defendant is a "person" as defined in Cal. Civil Code § 1761(c).

168.    Plaintiff Seiber and the California Class Members are "consumers" as defined in Cal. Civil Code § 1761(d).

169.    The Class Vehicles constitute "goods" and "services," as defined by Cal. Civ. Code § 1761(a) and (b).

170.    Plaintiff Seiber and California Class Members' purchases or leases of the Class Vehicles constitute "transactions," as defined by Cal. Civ. Code § 1761(e).

171.    Plaintiff Seiber and California Class Members purchased or leased the Class Vehicles for personal, family, and household purposes, as defined by Cal. Civ. Code § 1761(d).

172.    Defendant violated California Civil Code § 1770(a)(5), (7), (14), and (16) when it sold or leased Plaintiff Seiber and California Class Members the Class Vehicles with knowledge that they contained the Windshield Defect and knowingly concealed said defects from Plaintiff Seiber and California Class Members with the intent that they rely upon Defendant's concealment.

173.    The Class Vehicles' Windshield Defect poses an unreasonable safety risk to consumers and other members of the public with whom they share the road.  Defendant had exclusive knowledge of the defect and has actively concealed it from consumers.

174.    In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the Class Vehicles are defective. The existence of the Windshield Defect, which manifests in all or substantially all of the Class Vehicles, is material to a reasonable consumer in that it poses an unreasonable risk to their safety, may lead to thousands of dollars in repair expenses, and causes the Class Vehicles to be worth substantially less than they would otherwise be valued.

175.    In purchasing or leasing the Class Vehicles, Plaintiff Seiber and California Class Members were deceived by Defendant's failure to disclose that the Class Vehicles suffered from the Windshield Defect as described above, or that Defendant would not repair or replace such defect as required under applicable warranties.

176.    In purchasing or leasing the Class Vehicles, Plaintiff Seiber and Class Members were deceived by Defendant's failure to disclose that the Class Vehicles' windshields are substantially likely to fail and crack in the course of ordinary use of the Class Vehicles.

177.    Defendant owed Plaintiff Seiber and California Class Members a duty to disclose the truth about the Windshield Defect because:

a.    Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' windshields;

b.    Defendant knew that the Class Vehicles and their windshields suffered from an inherent defect, were defectively made and/or manufactured, and were not suitable for their intended use;

c.    Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their windshields; and

d.    Defendant actively concealed the defective nature of the Class Vehicles and their windshields from Plaintiff Seiber and California Class Members.

178.    Defendant intentionally and knowingly concealed material facts regarding the Class Vehicles with an intent to mislead Plaintiff Seiber and California Class Members.

179.    Plaintiff Seiber and Class Members reasonably relied upon Defendant's false misrepresentations. They had no way of knowing that Defendant's representations were false and gravely misleading.

180.    Plaintiff Seiber and California Class Members were unaware of the Windshield Defect and would not have purchased the Class Vehicles, or would have paid less for the Class

Vehicles, had they known, prior to their respective time of purchase or lease, of such defects in the Class Vehicles.

181.    As a result of Defendant's acts, Plaintiff Seiber and Class Members have suffered damages. Plaintiff Seiber and Class Members would not have purchased or leased Class Vehicles had the Windshield Defect and associated risks and costs been disclosed to them.  They are left with vehicles of diminished value and utility because of such defect, which continues to pose a safety risk and will continue to require future repairs and replacement parts at Class Vehicle owners' expense.

182.    Plaintiff Seiber seeks an order requiring Defendant to immediately disclose the existence of the Windshield Defect and associated risks to all existing and prospective customers, to repair the defect and all resulting damage in Class Vehicles free of charge, and to cease selling new or certified pre-owned Class Vehicles through its dealerships until the defect is remedied.

183.    Plaintiff Seiber provided Defendant with notice of its violations of the CLRA pursuant to California Civil Code § 1782(a).  To date, Defendant has failed to provide appropriate relief for its violations of the CLRA. Therefore, Plaintiff Seiber and California Class Members seek monetary, compensatory, and punitive damages, in addition to injunctive and equitable relief.

## FOURHT CAUSE OF ACTION
### Violation of California Unfair Competition Law
### Cal. Bus. & Prof. Code §§ 17200, *et seq.*

### (Plaintiff Seiber on behalf of the proposed California Class)

184.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

185.    California's Unfair Competition Law ("UCL"), California's Bus. & Prof. Code, § 17200, prohibits acts of "unfair competition," including any "unlawful, unfair or fraudulent business act or practice" and "unfair, deceptive, untrue or misleading advertising."

186.    The Class Vehicles' Windshield Defect poses an unreasonable safety risk to consumers and other members of the public with whom they share the road. Defendant had exclusive knowledge of the defect and has actively concealed it from consumers.

187.    In the course of Defendant's business, Defendant willfully failed to disclose and actively concealed that the Class Vehicles are defective. The existence of the Windshield Defect, which manifests in all or substantially all of the Class Vehicles, is material to a reasonable consumer in that it poses an unreasonable risk to their safety, may lead to thousands of dollars in repair expenses, and causes the Class Vehicles to be worth substantially less than they would otherwise be valued.

188.    In purchasing or leasing the Class Vehicles, Plaintiff Seiber and California Class Members were deceived by Defendant's failure to disclose that the Class Vehicles suffer from the Windshield Defect as described above, or that Defendant would not cure such defect as required under applicable warranties.

189.    In purchasing or leasing the Class Vehicles, Plaintiff Seiber and California Class Members were deceived by Defendant's failure to disclose that the Class Vehicles' windshield is substantially likely to fail in the course of ordinary vehicle operation.

190.    Defendant owed Plaintiff Seiber and California Class Members a duty to disclose the truth about the Windshield Defect because:

    a.    Defendant was in a superior position to know the true state of facts about the safety defect in the Class Vehicles' windshields;

b.  Defendant knew that the Class Vehicles and their windshields suffered from an inherent defect, were defectively designed and/or manufactured, and were not suitable for their intended use;

c.  Defendant made partial disclosures about the quality of the Class Vehicles without revealing the defective nature of the Class Vehicles and their windshields; and

d.  Defendant actively concealed the defective nature of the Class Vehicles and their windshields from Plaintiff Seiber and California Class Members.

191.    Defendant intentionally and knowingly concealed material facts regarding the Class Vehicles with the intent to mislead Plaintiff Seiber and California Class Members.

192.    Plaintiff Seiber and California Class Members reasonably relied upon Defendant's false misrepresentations. They had no way of knowing that Defendant's representations were false and gravely misleading.

193.    Plaintiff Seiber and California Class Members were unaware of the Windshield Defect and that the Class Vehicles' windshields are substantially likely to fail in the course of normal everyday driving conditions and would not have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, of such defects in the Class Vehicles.

194.    Plaintiff Seiber and California Class Members are reasonable consumers who do not expect their vehicles to suffer from the Windshield Defect.

195.    Defendant knew the Class Vehicles and their windshields suffered from inherent defects, were defectively designed or manufactured, would fail prematurely, and were not suitable for their intended use.

49

196.    In failing to disclose the defects with the Class Vehicles' windshields, Defendant has knowingly and intentionally concealed material facts and breached its duty not to do so.

197.    The facts Defendant concealed from or failed to disclose to Plaintiff Seiber and California Class Members are material in that a reasonable person would have considered them to be important in deciding whether to purchase or lease the Class Vehicles.  Had Plaintiff Seiber and California Class Members known that the Class Vehicles suffered from the Windshield Defect and posed a safety hazard, they would not have purchased or leased the Class Vehicles or would have paid less for them.

198.    Defendant continued to conceal the defective nature of the Class Vehicles and the Windshield Defect even after the Class Members began to report problems.

199.    Defendant's conduct was and is likely to deceive consumers.

200.    Defendant's acts, conduct and practices were unlawful, in that they constituted:

   a.   Violations of the California Consumer Legal Remedies Act;

   b.   Violations of the Song-Beverly Consumer Warranty Act; and

   c.   Violations of the express warranty provisions of California Commercial Code section 2313.

201.    By its conduct, Defendant has engaged in unfair competition and unlawful, unfair, and fraudulent business practices.

202.    Defendant's unfair or deceptive acts or practices occurred repeatedly in Defendant's trade or business and were capable of deceiving a substantial portion of the purchasing public.

203.    As a direct and proximate result of Defendant's unfair and deceptive practices, Plaintiff Seiber and California Class Members have suffered and will continue to suffer actual damages.

204.    The Class Vehicles are worth less with the Windshield Defect.

205.    Defendant has been unjustly enriched and should be required to make restitution to Plaintiff Seiber and California Class Members pursuant to §§ 17203 and 17204 of the Business & Professions Code.

206.    Further, Plaintiff Seiber seeks an order enjoining Defendant from committing such unlawful, unfair, and fraudulent business practices, and seek the full amount of money Plaintiff Seiber and California Class Members paid for the Class Vehicles and/or restitutionary disgorgement of profits from Defendant.  They also seek injunctive relief compelling Defendant to provide Class members with replacement components that do not contain the defects alleged herein; and/or compelling Defendant to reform its warranty, in a manner deemed to be appropriate by the Court, to cover the injury alleged and to notify all Class Members that such warranty has been reformed.

207.    Plaintiffs also seek attorneys' fees and costs under Cal Code Civ. Proc. § 1021.5.

208.    Money damages are not an adequate remedy for the above requested non-monetary injunctive relief because to date Defendant has not agreed to repair or replace Class Vehicles' windshields with non-defective windshields under its warranty, and Defendant has not developed or released to the public non-defective replacement windshields for the Class Vehicles.  Thus, absent this non-monetary injunctive relief the Class Vehicles' windshields will remain defective and unsafe.

## FIFTH CAUSE OF ACTION
**Breach of Implied Warranty pursuant to Song-Beverly
Consumer Warranty Act – Cal. Civ. Code §§ 1792 and 1791.1, *et seq.***

### (Plaintiff Seiber on behalf of the proposed California Class)

209.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

210.    Defendant is a merchant with respect to motor vehicles.

211.    The Class Vehicles were subject to implied warranties of merchantability running from the Defendant to Plaintiff Seiber and the California Class Members.

212.    An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

213.    Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the defects referenced herein and thus were not in merchantable condition when Plaintiff Seiber and the California Class Members purchased or leased the Class Vehicles, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used. Specifically, the Class Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because the Class Vehicles suffer from a Windshield Defect that can make driving unreasonably dangerous.

214.    As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles.

215.    Additionally, as a result of the Windshield Defect, Plaintiff Seiber and the California Class Members were harmed and suffered actual damages.

216.    Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use in violation of California Civil Code §§ 1792 and 1791.1.

### SIXTH CAUSE OF ACTION
### Breach of Express Warranty under Cal. Comm. Code § 2313

### (Plaintiff Seiber on behalf of the proposed California Class)

217.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

218.    In connection with the sale or lease of the Class Vehicles to Plaintiff Seiber and the California Class Members, Defendant provided Plaintiff Seiber and the California Class Members with its New Vehicle Limited Warranty where it promised to repair defective parts within 4 years or 50,000 miles in service, whichever comes first.

219.    Plaintiff Seiber and the California Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

220.    Plaintiff Seiber and the California Class Members submitted their Vehicles for warranty repairs as referenced herein. Defendant failed to comply with the terms of the express written warranty provided to each Class member, by failing and/or refusing to repair the Windshield Defect within a reasonable period of time under the vehicle's warranty as described herein.

221.    Plaintiff Seiber and the California Class Members have given Defendant reasonable opportunities to cure said defect, but Defendant has been unable and/or has refused to do so within a reasonable time.

222.    As a result of said nonconformities, Plaintiff Seiber and the California Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

223.    Plaintiff Seiber and the California Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff Seiber and the California Class Members' acceptance of the Class Vehicles.

224.    Plaintiff Seiber and the California Class Members would not have purchased or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that Class Vehicles contained the Windshield Defect.

225.    As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranties, Plaintiff Seiber and the California Class Members have suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

## SEVENTH CAUSE OF ACTION
**Breach of Express Warranty pursuant to Song-Beverly
Consumer Warranty Act – Cal. Civ. Code §§ 1793 and 1791.2, *et seq*.**

**(Plaintiff Seiber on behalf of the proposed California Class)**

226.    Plaintiffs incorporate by reference all of the above paragraphs of this Complaint as though fully stated herein.

227.    Plaintiff Seiber and the California Class Members are each a "buyer" as defined in Cal. Civ. Code § 1791(b).

228.    Defendant is a "manufacturer" as defined in Cal. Civ. Code § 1791(j).

229.    The Class Vehicles are each a "consumer good" as defined in Cal. Civ. Code § 1791(a).

230.    Cal. Civ. Code § 1794 provides a cause of action for any consumer who is damaged by the failure of a manufacturer to comply with an express warranty.

231.    In connection with the sale or lease of the Class Vehicles to Plaintiff Seiber and the California Class Members, Defendant provided Plaintiff Seiber and the California Class Members with express warranties within the meaning of Cal. Civ. Code §§ 1791.2 and 1793.2.

232.    Specifically, in connection with the sale or lease of the Class Vehicles to Plaintiff Seiber and the California Class Members, Defendant provided Plaintiff Seiber and the California Class Members with a New Vehicle Limited Warranty, under which it agreed to repair or replace original components found to be defective in material or workmanship within the first 4 years or 50,000 miles in service, whichever comes first.

233.    Plaintiff Seiber and the California Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

234.    Defendant breached these express warranties in that the Class Vehicles suffer from the above-described defects with the windshield, which substantially impair the Class Vehicles' use, safety, and value to Plaintiff Seiber and the California Class Members.

235.    Plaintiff Seiber and the California Class Members have given Defendant reasonable opportunities to cure said defects, but Defendant has been unable to do so within a reasonable time.

236.    As a result of said nonconformities, Plaintiff Seiber and the California Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, comfortable, and efficient transportation.

237.    Plaintiff Seiber and the California Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff Seiber and the California Class Members' acceptance of the Class Vehicles.

238.    Plaintiff Seiber and the California Class Members would not have purchased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that the windshield did not function as advertised and warranted.

239.    As a result of Defendant's breach of express warranties, Plaintiff Seiber and the California Class Members have been damaged in an amount that is the difference between the value of Class Vehicles if they had possessed the qualities and attributes represented and the value of the Class Vehicles Plaintiff Seiber and the California Class Members actually received.

<u>**EIGHTH CAUSE OF ACTION**</u>
**Violation of the Tennessee Consumer Protection Act,**
**Tenn. Code Ann. § 47-18-101, *et seq.***

**(Plaintiff Robinson on behalf of the proposed Tennessee Class)**

240.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

241.    Tennessee's Consumer Protection Act (the "TCPA") prohibits a person from engaging in "unfair or deceptive acts or practices," which includes knowingly making "representing that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits or quantities that they do not," or "representing that goods or services are of a

56

particular standard, quality or grade, or that goods are of a particular style or model, if they are of another." Tenn. Code Ann. § 47–18–104(a); (b)(5) and (7). Deceptive practices prohibited by the TCPA include "representing that a guarantee or warranty confers or involves rights or remedies which it does not have or involve." Tenn. Code Ann. § 47–18–104(a); (b)(19).

242.    Plaintiff Robinson and the Tennessee Class Members are each "consumers" under Tenn. Code Ann. § 47-18-103(3).

243.    Plaintiff Robinson, the Tennessee Class Members, and Defendant are each "persons" under Tenn. Code Ann. § 47-18-103(14).

244.    The Class Vehicles are each "goods" under Tenn. Code Ann. § 47-18-103(8) as they are "tangible chattels leased, bought, or otherwise obtained for use by an individual primarily for personal, family, or household purposes or a franchise, distributorship agreement, or similar business opportunity."

245.    At all relevant times, Defendant has engaged in "trade," "commerce" and "consumer transactions" under Tenn. Code Ann. § 47-18-103(20) by advertising, offering for sale, selling, leasing, and/or distributing vehicles in the United States, including Tennessee, directly or indirectly affecting Tennessee citizens through that trade and commerce.

246.    The allegations set forth herein constitute unfair and deceptive acts and practices in violation of the Tennessee's Consumer Protection Act, Tenn. Code Ann. § 47-18-101, *et seq.*

247.    By failing to disclose and concealing the Windshield Defect from Plaintiff Robinson and the Tennessee Class Members, Defendant violated the TCPA, because, *inter alia,* Defendant represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when

they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.

248.    Defendant's unfair and deceptive acts and practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

249.    Defendant knew that the Class Vehicles suffer from the Windshield Defect, were defectively manufactured or made, and were not suitable for their intended use.

250.    Defendant was under a duty to Plaintiff Robinson and the Tennessee Class Members to disclose the Windshield Defect because:

    a.    Defendant was in a superior position to know the true state of facts about the Windshield Defect contained in the Class Vehicles;

    b.    Defendant knew that the Class Vehicles suffered from an inherent defect, were defectively manufactured, and were not suitable for their intended use;

    c.    Plaintiff Robinson and the Tennessee Class Members could not reasonably have been expected to learn or discover that their vehicles have a dangerous safety defect until after they purchased the Class Vehicles; and,

    d.    Defendant knew that Plaintiff Robinson and the Tennessee Class Members could not reasonably have been expected to learn about or discover the Windshield Defect.

251.    The facts concealed or not disclosed by Defendant to Plaintiff Robinson and the Tennessee Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

252.    Plaintiff Robinson and the Tennessee Class Members relied on Defendant to disclose material information it knew, such as the Windshield Defect in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

253.    By failing to disclose the Windshield Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

254.    Moreover, Defendant's intentional concealment of and failure to disclose the Windshield Defect constitutes an unfair and deceptive act and practice because, to the detriment of Plaintiff Robinson and the Tennessee Class Members, that conduct took advantage of Plaintiff Robinson and the Tennessee Class Members' lack of knowledge, ability, and experience to a grossly unfair degree. Defendant's unfair and deceptive trade practices were a producing cause of the economic damages sustained by Plaintiff Robinson and the Tennessee Class Members.

255.    The facts concealed or not disclosed by Defendant to Plaintiff Robinson and the Tennessee Class Members are material because a reasonable consumer would have considered them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

256.    Had Plaintiff Robinson and the Tennessee Class Members known that the Class Vehicles would suffer from the Windshield Defect, they would not have purchased the Class Vehicles or would have paid substantially less for them.

257.    Plaintiff Robinson and the Tennessee Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Windshield Defect.  That is the reasonable and objective consumer expectation for vehicles.

258.     As a result of Defendant's misconduct, Plaintiff Robinson and the Tennessee Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective and require repairs or replacement and are worth less money because of the Defect.

259.     Plaintiff Robinson has provided adequate notice to Defendant.

260.     Plaintiff Robinson and the Tennessee Class Members should be awarded three times the amount of their economic damages because Defendant intentionally concealed and failed to disclose the defective nature of the Class Vehicles.

261.     Plaintiff Robinson also seeks an order enjoining Defendant's unfair, unlawful, or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper remedy under the TCPA.

### NINTH CAUSE OF ACTION
**Breach of Express Warranty under Tenn. Code Ann. § 47-2-313**

**(Plaintiff Robinson on behalf of the proposed Tennessee Class)**

262.     Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

263.     In connection with the sale or lease of the Class Vehicles, Defendant provided Plaintiff Robinson and the Tennessee Class Members with its New Vehicle Limited Warranty where it promised to repair defective parts within 4 years or 50,000 miles in service, whichever comes first.

264.     Plaintiff Robinson and the Tennessee Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

265.    Plaintiff Robinson and the Tennessee Class Members submitted their Vehicles for warranty repairs as referenced herein.  Defendant failed to comply with the terms of the express written warranty provided to each Class member, by failing to repair the Windshield Defect under the vehicle's warranty within a reasonable period of time as described herein.

266.    Plaintiff Robinson and the Tennessee Class Members have given Defendant reasonable opportunities to cure said defect, but Defendant has been unable and/or has refused to do so within a reasonable time.

267.    As a result of said nonconformities, Plaintiff Robinson and the Tennessee Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

268.    Plaintiff Robinson and the Tennessee Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff Robinson and the Tennessee Class Members' acceptance of the Class Vehicles.

269.    Plaintiff Robinson and the Tennessee Class Members would not have purchased or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that Class Vehicles contained the Windshield Defect.

270.    As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranties, Plaintiff Robinson and the Tennessee Class Members have suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

**TENTH CAUSE OF ACTION**
**Violation of the Virginia Consumer Protection Act,**
**Va. Code Ann. § 59.1-196, *et seq.***

**(Plaintiff Hughes on behalf of the proposed Virginia Class)**

271.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

272.    Virginia's Consumer Protection Act (the "VCPA") prohibits a person from engaging in practices such as knowingly "misrepresenting that goods or services have certain quantities, characteristics, ingredients, uses, or benefits," or "misrepresenting that goods or services are of a particular standard, quality, grade, style, or model," or "advertising goods or services with intent not to sell them as advertised." Va. Code Ann. § 59.1-200(5), (6) and (8). Deceptive practices prohibited by the VCPA include "using any other deception, fraud, false pretense, false promise, or misrepresentation in connection with a consumer transaction." Va. Code Ann. § 59.1-200(14).

273.    The Class Vehicles are "goods" under Va. Code Ann. § 59.1-198 because they are tangible personal property that were purchased or leased for use.

274.    Defendant is a "supplier" under Va. Code Ann. § 59.1-198 because it is a seller that advertises, solicits, and/or engages in consumer transactions.  Defendant is also a manufacturer, distributor, and/or licensor who advertises and sells, leases, or licenses goods or services to be resold, leased, or sublicensed by other persons in consumer transactions.

275.    Defendant engaged in a "consumer transaction" under Va. Code Ann. § 59.1-198 by advertising, offering for sale, selling, leasing, and/or distributing the subject vehicles in the United States, including Virginia, directly or indirectly affecting Virginia citizens through that

trade and commerce.  Further the subject vehicles are goods to be used primarily for personal, family or household purposes.

276.    The allegations set forth herein constitute unfair and deceptive acts and practices in violation of the Virginia's Consumer Protection Act, Va. Code Ann. § 59.1-196, *et seq.*

277.    By failing to disclose and concealing the Windshield Defect from Plaintiff Hughes and the Virginia Class Members, Defendant violated the VCPA, because, *inter alia,* Defendant represented that the Class Vehicles had characteristics and benefits that they do not have, represented that the Class Vehicles were of a particular standard, quality, or grade when they were of another, and advertised the Class Vehicles with the intent not to sell them as advertised.

278.    Defendant's unfair and deceptive acts and practices occurred repeatedly in Defendant's trade or business, were capable of deceiving a substantial portion of the purchasing public and imposed a serious safety risk on the public.

279.    Defendant knew that the Class Vehicles suffer from the Windshield Defect, were defectively manufactured or made, and were not suitable for their intended use.

280.    Defendant was under a duty to Plaintiff Hughes and the Virginia Class Members to disclose the Windshield Defect because:

  e.  Defendant was in a superior position to know the true state of facts about the Windshield Defect contained in the Class Vehicles;

  f.  Defendant knew that the Class Vehicles suffered from an inherent defect, were defectively manufactured, and were not suitable for their intended use;

g.  Plaintiff Hughes and the Virginia Class Members could not reasonably have been expected to learn or discover that their vehicles have a dangerous safety defect until after they purchased the Class Vehicles; and,

h.  Defendant knew that Plaintiff Hughes and the Virginia Class Members could not reasonably have been expected to learn about or discover the Windshield Defect.

281.  The facts concealed or not disclosed by Defendant to Plaintiff Hughes and the Virginia Class Members are material in that a reasonable person would have considered them to be important in deciding whether or not to purchase the Class Vehicles.

282.  Plaintiff Hughes and the Virginia Class Members relied on Defendant to disclose material information it knew, such as the Windshield Defect in the Class Vehicles, and not to induce them into a transaction they would not have entered had the Defendant disclosed this information.

283.  By failing to disclose the Windshield Defect, Defendant knowingly and intentionally concealed material facts and breached its duty not to do so.

284.  Moreover, Defendant's intentional concealment of and failure to disclose the Windshield Defect constitutes an unfair and deceptive act and practice because, to the detriment of Plaintiff Hughes and the Virginia Class Members, that conduct took advantage of Plaintiff Hughes and the Virginia Class Members' lack of knowledge, ability, and experience to a grossly unfair degree. Defendant's unfair and deceptive trade practices were a producing cause of the economic damages sustained by Plaintiff Hughes and the Virginia Class Members.

285.  The facts concealed or not disclosed by Defendant to Plaintiff Hughes and the Virginia Class Members are material because a reasonable consumer would have considered

them to be important in deciding whether or not to purchase the Class Vehicles, or to pay less for them.

286.    Had Plaintiff Hughes and the Virginia Class Members known that the Class Vehicles would suffer from the Windshield Defect, they would not have purchased the Class Vehicles or would have paid substantially less for them.

287.    Plaintiff Hughes and the Virginia Class Members are reasonable consumers who do not expect that their vehicles will suffer from a Windshield Defect.  That is the reasonable and objective consumer expectation for vehicles.

288.    As a result of Defendant's misconduct, Plaintiff Hughes and the Virginia Class Members have been harmed and have suffered actual and economic damages in that the Class Vehicles are defective and require repairs or replacement and are worth less money because of the Defect.

289.    Plaintiff Hughes has provided adequate notice to Defendant.

290.    Plaintiff Hughes and the Virginia Class Members should be awarded three times the amount of their economic damages under Va. Code Ann. § 59.1-204(A) because Defendant intentionally and willfully concealed and failed to disclose the defective nature of the Vehicle.

291.    Plaintiff Hughes also seeks an order enjoining Defendant's unfair, unlawful, or deceptive practices, declaratory relief, attorneys' fees, and any other just and proper remedy under the VCPA.

## ELEVENTH CAUSE OF ACTION
### Breach of the Implied Warranty of Merchantability under Va. Code Ann. § 8.2-314

### (Plaintiff Hughes on behalf of the proposed Virginia Class)

292.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

293.    Defendant is a merchant with respect to motor vehicles.

294.    The Class Vehicles were subject to implied warranties of merchantability running from the Defendant to Plaintiff Hughes and the Virginia Class Members.

295.    An implied warranty that the Class Vehicles were merchantable arose by operation of law as part of the sale or lease of the Class Vehicles.

296.    Defendant breached the implied warranty of merchantability in that the Class Vehicles suffer from the defects referenced herein and thus were not in merchantable condition when Plaintiff Hughes and the Virginia Class Members purchased or leased the Class Vehicles, or at any time thereafter, and the Class Vehicles are unfit for the ordinary purposes for which such vehicles are used. Specifically, the Class Vehicles were and are not fit for their ordinary purpose of providing reasonably reliable and safe transportation because the Class Vehicles suffer from a Windshield Defect that can make driving unreasonably dangerous.

297.    As a result of Defendant's breach of the applicable implied warranties, owners and lessees of the Class Vehicles suffered an ascertainable loss of money, property, and/or value of their Class Vehicles. Defendant's actions, as complained of herein, breached the implied warranty that the Class Vehicles were of merchantable quality and fit for such use.

## TWELFTH CAUSE OF ACTION
### Breach of Express Warranty under Va. Code Ann. § 8.2-313

### (Plaintiff Hughes on behalf of the proposed Virginia Class)

298.    Plaintiffs incorporate by reference all allegations contained in this Complaint as though fully stated herein.

299.    In connection with the sale or lease of the Class Vehicles, Defendant provided Plaintiff Hughes and the Virginia Class Members with its New Vehicle Limited Warranty where

it promised to repair defective parts within 4 years or 50,000 miles in service, whichever comes first.

300.    Plaintiff Hughes and the Virginia Class Members relied on Defendant's warranties when they agreed to purchase or lease the Class Vehicles and Defendant's warranties were part of the basis of the bargain.

301.    Plaintiff Hughes and the Virginia Class Members submitted their Vehicles for warranty repairs as referenced herein.  Defendant failed to comply with the terms of the express written warranty provided to each Class member, by failing to repair the Windshield Defect under the vehicle's warranty within a reasonable period of time as described herein.

302.    Plaintiff Hughes and the Virginia Class Members have given Defendant reasonable opportunities to cure said defect, but Defendant has been unable and/or has refused to do so within a reasonable time.

303.    As a result of said nonconformities, Plaintiff Hughes and the Virginia Class Members cannot reasonably rely on the Class Vehicles for the ordinary purpose of safe, reliable, comfortable, and efficient transportation.

304.    Plaintiff Hughes and the Virginia Class Members could not reasonably have discovered said nonconformities with the Class Vehicles prior to Plaintiff Hughes and the Virginia Class Members' acceptance of the Class Vehicles.

305.    Plaintiff Hughes and the Virginia Class Members would not have purchased or leased the Class Vehicles, or would have paid less for the Class Vehicles, had they known, prior to their respective time of purchase or lease, that Class Vehicles contained the Windshield Defect.

306.    As a direct and proximate result of the willful failure of Defendant to comply with its obligations under the express warranties, Plaintiff Hughes and the Virginia Class Members have suffered actual and consequential damages. Such damages include, but are not limited to, the loss of the use and enjoyment of their vehicles, and a diminution in the value of the vehicles containing the defects identified herein.

## DEMAND FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, pray for judgment against Defendant as follows:

a.    An order certifying the proposed Classes, designating Plaintiffs as named representative of the Classes, and designating the undersigned as Class Counsel;

b.    An order awarding Plaintiffs and class members their actual damages, incidental and consequential damages, punitive damages, and/or other form of monetary relief provided by law;

c.    An order awarding Plaintiffs and the classes restitution, disgorgement, or other equitable relief as the Court deems proper;

d.    Equitable relief including, but not limited to, replacement of the Class Vehicles with new vehicles, or repair of the defective Class Vehicles with an extension of the express warranties and service contracts which are or were applicable to the Class Vehicles;

e.    A declaration requiring Defendant to comply with the various provisions of the state and federal consumer protection statutes herein alleged and to make all the required disclosures;

f.   Reasonable attorneys' fees and costs;

g.   Pre-judgment and post-judgment interest, as provided by law;

h.   Plaintiffs demand that Defendant perform a recall, and repair all Class

Vehicles; and

i.   Such other and further relief as this Court deems just and proper.

**TRIAL BY JURY DEMANDED ON ALL COUNTS**


Dated: September 16, 2024

STEPHEN SEIBER, CHRIS ROBINSON,
PAMELA HUGHES, *ON BEHALF OF
THEMSELVES AND ALL OTHERS SIMILARLY
SITUATED*,

By  /s/ *Sergei Lemberg*
Sergei Lemberg, Esq.
LEMBERG LAW, LLC
43 Danbury Road
Wilton, CT 06897
Phone: (203) 653-2250
Fax:    (203) 653-3424
*Attorneys for Plaintiffs*